UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 20-131 |
| KESHAWN PATTON | SECTION: "J" (5) |

## ORDER & REASONS

Before the Court is a *Motion to Suppress Evidence* **(Rec. Doc. 24)** filed by Defendant Keshawn Patton. The Government opposes the motion (Rec. Doc. 25), and Patton filed a reply (Rec. Doc. 33). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

On March 16, 2020, New Orleans Police Department Detectives Glenn Miller and Kevin Doucette were conducting a covert drug investigation outside an apartment complex while in plainclothes and an unmarked car. The detectives chose this location because two shootings and a homicide had occurred in this area within the past few weeks. After about five minutes, the detectives saw Patton leave the apartment complex and observed him "continuously adjusting the right lower portion of his shirt . . . near the right waist-band area of his person," which they believed "to

be consistent with an individual attempting to conceal a fire-arm."[1] The detectives also observed Patton "continuously looking around in a three hundred and sixty degree motion in a manner indicative [of] an individual looking for police in the area."[2]

Patton walked from the apartment complex to the parking lot of an adjacent gas station, where the detectives observed him get into the front passenger seat of a gray SUV with out of state license plates. The detectives then radioed for uniformed officers to conduct a traffic stop of the SUV. NOPD Officers Isaiah Shannon and Demond Davis began following the vehicle, but before they could stop it, it pulled into a gas station, and Patton exited the vehicle and entered the gas station. Officers Shannon and Davis followed Patton into the gas station.

Inside, Davis approached Patton, grabbed his arm, and told him to turn around. Patton pulled his arm away and tried to move away from Davis, questioning why he was being detained. Patton attempted to move behind the counter, but Davis grabbed the back of his shirt, pulled him into a corner, and attempted to handcuff him while Shannon pointed a taser at Patton. Patton continued resisting Davis's attempts handcuff him, getting on the ground and grabbing a table leg and refusing to let go. Patton then started struggling with the officers, striking Shannon and biting his left hand while Shannon tried to handcuff him. Shannon told Patton he was under

---

[1] (Rec. Doc. 24-5, at 3). The Government asserts that the detectives observed Patton emerging from the area of the apartment complex where the investigation was centered and carrying a small bag, which, they believed, suggested that Patton was resupplying. (Rec. Doc. 25, at 2-3). However, as the Government has not introduced any evidence establishing these facts, the Court will not consider them at this time. *See, e.g.*, *United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005) ("The government bears the burden of showing the reasonableness of a warrantless search or seizure.").

[2] (Rec. Doc. 24-5, at 3).

2

arrest for battery of a police officer as the officers continued to try to handcuff him. Shannon then drew his baton and struck Patton several times to get him to let go of the table. Eventually, Patton stopped resisting and the officers handcuffed him. The officers searched Patton and found a handgun with 22 live rounds and a bottle containing 43 pills that tested positive for amphetamines.

Patton was initially charged in state court with illegal carrying of a firearm by a convicted felon, possession of a firearm in the presence of illegal narcotics, possession of a Schedule II controlled dangerous substance (amphetamines), illegal possession of a firearm by a person convicted of domestic violence, and battery on a police officer. He was later indicted in federal court for possession with intent to distribute amphetamine, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. He now moves to suppress the firearm and narcotics, arguing that the officers lacked reasonable suspicion to detain him.

## DISCUSSION

### I.  LOUISIANA LAW DOES NOT APPLY

Patton first argues that Louisiana law applies to his motion to suppress, relying on *United States v. Chew*, 1 F.3d 1238, 1993 WL 309932 (5th Cir. 1993) (unpublished). This argument is unavailing. As the Fifth Circuit has explained:

> [T]he proper inquiry in determining whether to exclude the evidence at issue is not whether the state officials' actions in arresting him were "lawful" or "valid under state law." The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth

> Amendment to the United States Constitution. This is so because, absent an exception, the exclusionary rule requires that evidence obtained in violation of the Fourth Amendment be suppressed. The exclusionary rule was created to discourage violations of the Fourth Amendment, not violations of state law.

*United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992); *see also Elkins v. United States*, 364 U.S. 206, 224 (1960) ("The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.").

## II.   THE OFFICERS LAWFULLY SEARCHED PATTON INCIDENTALLY TO HIS ARREST

Under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may briefly detain a person for investigative purposes if they can point to "specific and articulable facts" that give rise to reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime. *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). Although reasonable suspicion requires more than a "mere hunch," it "need not rise to the level of probable cause." *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). An "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an intrusion into the privacy of the detained individual. *Terry*, 392 U.S. at 21. To find that reasonable suspicion existed to justify a stop, a court must examine the "totality of the circumstances" in light of the individual officers' training and experience and should uphold the stop only if it finds that "the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." *United States*

*v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

However, the Court need not determine whether reasonable suspicion existed for the officers' initial seizure of Patton because "[a] person who is stopped or detained illegally is not immunized from prosecution for crimes committed during his detention period." *United States v. Garcia-Jordan*, 860 F.2d 159, 160 (5th Cir. 1988). In *Garcia-Jordan*, Border Patrol agents pulled over the defendant after being alerted that an electronic sensor along a highway near the border had been activated and then observing the defendant's vehicle driving north along that highway. *Id.* When questioned by the first agent, the defendant claimed he was an American citizen and produced a birth certificate and social security card. *Id.* The second agent went to interview the passenger, who told the agent that he (the passenger) was a Mexican citizen in the United States illegally, and the agents arrested both men. *Id.* The defendant was later identified as a Mexican citizen and charged with falsely representing himself to be a citizen of the United States. *Id.* The defendant moved to suppress the statement he gave to the agents after his vehicle was stopped, which the district court denied. *Id.*

On appeal, the Fifth Circuit did not consider whether the traffic stop was unlawful because the defendant's "false statement of citizenship was a new and distinct crime" and held that his "prosecution for this new crime, committed in the officer's presence, is not barred by the exclusionary rule." *Id.* at 161.

Likewise, in *United States v. Puluc-Garcia*, 447 F. App'x 567, 567 (5th Cir. 2011) (per curiam), the defendant was the passenger in a vehicle stopped by a Border Patrol agent and detained because he was undocumented. After being detained, the defendant attempted to flee and struggled with the agent, causing the agent to fall and break his shoulder blade. *Id.* at 568. The Fifth Circuit affirmed the district court's denial of the defendant's motion to suppress and his conviction for assaulting a federal officer, stating that the assault "provided probable cause for his arrest and broke the causal link with any illegality arising from the initial traffic stop." *Id.*

Here, regardless of whether Patton's initial detention by Davis and Shannon was lawful, his subsequent arrest and the search incidental to that arrest were lawful because Patton committed a new crime in their presence—battery of a police officer—that justified the arrest and search. *See Garcia-Jordan*, 860 F.2d at 161; *Puluc-Garcia*, 447 F. App'x at 568. Patton's argument that his subsequent illegal conduct was not sufficiently attenuated by time or location is unavailing, because "[i]ndependent probable cause that develops after an illegal arrest is 'a critical factor attenuating the taint of the initial illegal arrest.'" *Puluc-Garcia*, 447 F. App'x at 567 (quoting *United States v. Cherry*, 794 F.2d 201, 206 (5th Cir. 1986)). Additionally, his argument that "he did not engage in proactive aggression towards police officers"[3] is undercut by the fact that he bit Shannon. Further, although *Garcia-Jordan* and *Puluc-Garcia* dealt solely with post-detention conduct that constituted an offense, the Fifth Circuit has also indicated that it is appropriate for officers to seize evidence in

---

[3] (Rec. Doc. 33, at 7).

such a situation and that such evidence is admissible. *See United States v. Butts*, 729 F.2d 1514, 1518 (5th Cir. 1984) ("[I]f following an illegal arrest the defendant commits another criminal act in a public area, an officer who would not have seen the defendant but for the illegal arrest may testify to the criminality he later observes in a public place. The officer may also lawfully seize evidence derived from the commission of the subsequent criminal act."). Thus, the firearm and narcotics are admissible due to Patton's arrest for battery of a police officer, even if the officers lacked reasonable suspicion for the initial seizure.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Keshawn Patton's *Motion to Suppress Evidence* **(Rec. Doc. 24)** is **DENIED**.

New Orleans, Louisiana, this 15th day of June, 2021.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE